**In the Matter of TAXMAN CLOTHING COMPANY, Debtor.**

**Appeal of ARTHUR WINER, INCORPORATED, et al.**

Nos. 94–2295, 94–2416.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 9, 1995.

Decided Feb. 28, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 30, 1995.

Steven R. Radtke (submitted), Max Chill, Chill, Chill & Radtke, Chicago, IL, for Arthur Winer, Inc., L. Grief & Co., Territorial Financial Co., Glen Eagle, Inc. and Linden Clothing Co.

Philip S. Aimen, pro se.

Philip S. Aimen (submitted), pro se.

Before POSNER, Chief Judge, and COFFEY and MANION, Circuit Judges.

POSNER, Chief Judge.

A small retail clothing store in Chicago declares bankruptcy. Fourteen years elapse. The bankruptcy proceeding is still going on. The debtor's estate, a meager $113,000 to begin with, has, *Bleak House* fashion, been entirely consumed by the fees and expenses charged by the lawyers for the estate. (Well, not *entirely;* there is $3,000 left; but this tiny residue is sure to be consumed by administrative expenses.) Yet the principal lawyer, who has received $85,000, wants additional fees (really just an *award* of additional fees, as there are no assets left out of which to pay him). Creditors who own 79 percent of the debtor's unsecured debt object to the amount of fees that the lawyer has already been awarded. They want the award cut down and the lawyer forced to return most of the fees he has received, so that some money will be left for the creditors.

In 1983 the trustee in bankruptcy of Taxman Clothing Company retained attorney Philip Aimen to recover some $61,000 in alleged preferences voidable under 11 U.S.C. § 547(b). Six months later, in the final pretrial order in the preference proceeding, Aimen, having investigated the alleged prefer-

ences, scaled back the preference claim to $33,000. That was at the beginning of May of 1984. Two weeks later Aimen applied to the bankruptcy court for interim compensation (expressly authorized by 11 U.S.C. § 331) of $7,000. There was no objection, and the court awarded Aimen this amount. The law is clear, however, that all interim awards of attorney's fees in bankruptcy cases are tentative. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1321 (5th Cir.1989); *In re Stable Mews Associates*, 778 F.2d 121, 123 n. 3 (2d Cir.1985).

The preference action was tried by the bankruptcy judge in a leisurely fashion (shades of *Jarndyce v. Jarndyce* again), with many interruptions, during 1985 and 1986. In May of 1985, before the end of the trial, Aimen asked for and received, this time over the objection of the committee of creditors that is before us in these appeals, a surprisingly large further award of $25,000 in interim fees. Together with what he had received previously, Aimen had now been paid $32,000 to recover $33,000 for the nonpreferred creditors.

This was not the end. Far from it. In June of the following year, 1986, Aimen asked for and, again over objection, received another $9,000 in interim fees. He had now received more than he could possibly gain for the nonpreferred creditors; and since the proceeding to recover that gain was still not over with, it was possible that he would recover nothing for them at all. In November 1986 Aimen asked for and received another $5,000 in interim fees although there was still no judgment in the preference action.

In February 1987, the bankruptcy court rendered its judgment at last. The judgment was in favor of the debtor, and with interest and costs came to $44,000, but Aimen had already received $46,000 in fees, so the nonpreferred creditors were still net losers as a result of the preference action brought on their behalf. The defendants in that action appealed to the district court, and while that appeal was pending Aimen received another $12,000 in interim fees. After the district court affirmed the judgment of the bankruptcy court in the preference suit,

he got another $1,000. He was now up to $59,000 in fees. While the further appeal of the defendants in the preference suit was pending in this court, the bankruptcy court, again over objection, awarded Aimen another $25,000. The grand total was within a couple of hundred dollars of $85,000.

We then reversed the judgment in the preference suit and directed entry of judgment for the defendants, 905 F.2d 166 (7th Cir.1990)—meaning that Aimen hadn't recovered a penny for anyone, even though he had received almost $85,000 in fees, constituting a large fraction of the net assets of the estate. The matter now returned to the bankruptcy court, where Aimen sought *additional* fees, while the objecting creditors sought a final compensation order that would require Aimen to return to the estate a portion of the interim fees that he had received. The bankruptcy court confirmed the $85,000 in attorney's fees but refused any additional compensation to Aimen, precipitating an appeal and a cross-appeal to the district court. The district court reversed and remanded, remarking its "wholehearted agreement" with the proposition that "an expenditure of $84,-873.50 to recover $32,682.78 [the amount Aimen had sought in the final pretrial order in the preference action] is clearly unbalanced." Yet on remand the bankruptcy court, in apparent defiance of the district court, reinstated its final compensation award of $84,873.50 on the ground that, had Aimen not lost the suit to recover the alleged preference items, he would have been entitled, on the basis of hours expended, to an even larger award of fees. The district court (a different judge from the one who had reversed the identical award) affirmed, and the case has now come back to us.

The Bankruptcy Code authorizes a bankruptcy court to award to professionals who render services to a debtor's estate "reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 330(a)(1). This provision changed the law as it had stood before the enactment of the Code in

1978. Under the old law, courts had evolved a concept that they called the "spirit of economy," whereby those who rendered services to a bankrupt estate were entitled only to minimum compensation. 2 *Collier on Bankruptcy* ¶ 330.02 (15th ed., Lawrence P. King ed. 1993). The concept was more commonly applied to trustees, viewed as ad hoc civil servants, *In re York Int'l Building, Inc.*, 527 F.2d 1061, 1072–73 (9th Cir.1975) ("approximately twice the hourly rate of a district judge should be sufficient," *id.* at 1073), than to the lawyers retained by the trustee, but there are examples of the concept's being applied to them too. See, e.g., *In re J.W. Harrison Mercantile Co.*, 95 Fed. 123 (W.D.Mo.1899). The new provision was intended to allow lawyers and other professionals retained by the trustee to get compensation comparable to what they would receive in nonbankruptcy cases. *In re UNR Industries, Inc.*, 986 F.2d 207, 208–09 (7th Cir. 1993); *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 850–51 (3d Cir.1994).

Aimen interprets this principle of comparable compensation as entitling him to an award of fees equal to the number of hours he spent on the preference action (and on his efforts to obtain fees) times his normal hourly rate, provided that neither the rate nor the number of hours is excessive in relation to the nature of the professional services rendered but irrespective of any lack of success. Aimen did not have a contingent-fee agreement with the debtor's estate, and therefore, he argues, he shouldn't have to bear the risk of losing the preference-avoidance suit. He reminds us that, in contrast to most fee-shifting statutes, section 330(a)(1) of the Bankruptcy Code does not confine entitlement to fees to prevailing parties.

This is an audacious argument—an illustration of the adage that the best defense is a good offense—given that the only result of Aimen's efforts to recover the alleged preferences was to drain the debtor's estate of 75 percent of its value ($85,000/$113,000), so that together with the other expenses of administration the estate has been depleted to the point where the creditors will realize nothing. But there is a little more merit to the argument than may at first appear. Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made. Suppose that Aimen had been seeking to recover not $33,000 but $330,000 and that he had had a 90 percent chance of winning a judgment for that amount and successfully defending the judgment in this court. An expenditure of $85,000 in attorney's fees would not be unreasonable when the expected benefit was $297,000 ($330,000 × .9), so if the attorney performed competently but simply was unlucky and lost he would have a good claim for his fees, just as if he had been hired on a noncontingent basis to handle a comparable litigation outside of bankruptcy. See generally *In re Central Ice Cream Co.*, 841 F.2d 732 (7th Cir.1988).

Nor would it be a case of throwing good money after bad if, having won a judgment in the district court, the attorney incurred considerable expense to defend it in the appellate court, even though the consequence of losing in that court might be to increase the net loss to the estate of having undertaken the litigation in the first place. Indeed, one can imagine a case in which the total attorney's fees would at the end of the day exceed the potential gain from the suit yet have been reasonably incurred. This is just to say that a risk prudently incurred may still turn out badly. Suppose in our hypothetical case that the attorney for the estate was on the verge of winning the $330,000 that he sought, having incurred $60,000 in attorney's fees so far. Unexpectedly the defendants produce surprise witnesses whose testimony threatens to demolish the estate's case unless countered at great expense. It will cost the estate $280,000 in additional attorney's fees to win, though if it incurs those costs victory is assured. Should the attorney abandon the suit because the total costs are certain to exceed the gain? He should not. If he abandons the suit, the estate will have incurred a net loss of $60,000, the costs incurred to date. If he incurs the additional costs required for victory, the net loss will be reduced to $10,000 ($280,000 + $60,000 − $330,000).

▆ Even with the dramatically different figures in this case, Aimen would have been

on slightly safer ground than he was had he been acting at all times under the direction of an informed client. Yet even then he would not have been home free. A lawyer hired by a trustee in bankruptcy to do legal work for the estate, like the trustee himself, is a fiduciary of the estate. *In re Evangeline Refining Co., supra,* 890 F.2d at 1323; *In re Imperial "400" National, Inc.,* 456 F.2d 926, 929 (3d Cir.1972); *In re Consupak, Inc.,* 87 B.R. 529, 548 (Bankr.N.D.Ill.1988). And anyway we do not know to what extent Aimen was acting under the direction of the trustee. He was brought into the case when the trustee, a lawyer who had been handling the preference suit himself, had to recuse himself from that suit. It would be unusual, and we imagine improper, if despite having recused himself the trustee played a role behind the scenes in Aimen's conduct of the preference action. We do not know that he did, and it does not matter whether he did. Aimen was not a wind-up toy set in motion by the trustee. He had an independent fiduciary duty to the estate. As soon as it became clear that the preference suit could not yield the estate a net gain, he should have taken the necessary steps to drop it. We need not speculate about what he should have done if he had tried to stop and the trustee had ordered him to continue, *In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 23 (Bankr.S.D.N.Y.1991), or if he had been acting under a court's order. See *Yadkin Valley Bank & Trust Co. v. McGee,* 819 F.2d 74, 76 (4th Cir.1987).

Appellate review of an award of attorney's fees under 11 U.S.C. § 330 is deferential, as in other types of attorney's fee cases. *In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994); *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 878 (11th Cir.1990). But we think the bankruptcy judge and the (second) district judge clearly erred in finding that Aimen had complied with his fiduciary obligations to the debtor's estate. The key to our conclusion is the second request for interim compensation. (Remember that all awards of interim compensation are tentative, hence reviewable—and revisable—at the end of the case.) When Aimen put in that request for $25,000, he had believed for more than a year (since May 1984) that the most he could get in the preference suit was $33,-000. (We disregard interest and costs, since the latter are a wash and the former is compensation for delay and uncertainty in collection. As a result of what is already a fourteen-year delay in winding up the bankruptcy proceeding, the creditors have lost an enormous amount of interest on their claims.)

It was during that year after Aimen knew his claim was worth no more than $33,000 even if its merit was beyond dispute (which it was not, of course) that he did the work for which he sought the $25,000 in interim fees, since he had already received $7,000 for his earlier work. The preference suit was never a sure thing, or even a 90 percent sure thing; our reversal of the bankruptcy and district courts was unanimous. Before beginning the work for which he was to request $25,000 a year later, Aimen was required as a fiduciary of the estate to make a careful judgment whether the number of billable hours that he would be investing was commensurate with the expected gain. Only one reasonable judgment was possible: that it was not. The investment of $25,000 worth of time during the coming year would buy some unknown probability less than one of winning $33,000 for the nonpreferred creditors—*after* the expenditure of further resources, for there could be no assurance that the preference suit would end within the year, that is, by May 1985; in fact it did not end until 1990. Suppose a reasonable (we think a generous) judgment would have been that Aimen had a two-thirds chance of winning and that he would have to expend (ignoring as a sunk cost the $7,000 he had already billed) $30,000 in billable time. Then he would be contemplating an investment of $30,000 for an expected gain of $22,000 (two-thirds of $33,000). That is a losing investment.

The case would be different if, when Aimen had to make the crucial judgment whether to go forward or abandon, a reasonable estimate of the expense of completing the suit was, say, $5,000, and for reasons wholly beyond his control the expense skyrocketed—maybe because the defendants put up an unforeseeably stubborn, scorched-earth type of defense. He did complain in

the bankruptcy court that the defendants had protracted the trial by refusing to enter into stipulations. But in the first place, if the defendants behaved improperly Aimen could have sought sanctions. E.g., Bankr.R. 9011; *In re Kullgren,* 109 B.R. 949, 955–56 (Bankr. C.D.Cal.1990); cf. *Duffy v. Anitec Image Corp.,* 1991 WL 44834 (N.D.N.Y.1991). And in the second place, $25,000 is hardly an unexpectedly large attorney's fee for conducting a litigation for a year, including a trial. Indeed, it is a bargain rate. Aimen could not have anticipated having to spend less. It thus would have been *much* wiser for the estate, in prospect and not merely in retrospect, to write off the $7,000 it had spent on the preference action rather than to plunge unknown thousands more in a quest for a sum of money far too small to justify the efforts, even optimistically forecast, that would be required to have a reasonable chance of recovering it. Cf. *In re Central Ice Cream Co., supra.* So much wiser that Aimen's decision to proceed cannot be reconciled with his duty as a fiduciary to conserve the estate's net assets.

█ It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. *In re Great Sweats, Inc.,* 113 B.R. 240, 243–44 (Bankr.E.D.Va.1990). His duty is to endeavor to maximize the value of the estate, *CFTC v. Weintraub,* 471 U.S. 343, 352, 105 S.Ct. 1986, 1992–93, 85 L.Ed.2d 372 (1985); *In re Central Ice Cream Co.,* 836 F.2d 1068, 1072 (7th Cir.1987), which is to say the *net* assets. The performance of this duty will sometimes require him to forbear attempting to collect a particular asset, because the costs of collection would exceed the asset's value. *In re Great Sweats, Inc., supra,* 113 B.R. at 243–44. Put differently but equivalently, the care, diligence, and skill that a lawyer for the debtor's estate, *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 844 (Bankr.C.D.Cal. 1991), like the trustee himself, 5 *Collier on Bankruptcy, supra,* ¶ 1106.01[2][b], pp. 1106–8 to 1106–9, is required to bestow as part of his fiduciary duty is not merely care, diligence, and skill in the prosecution of the estate's claims. It is also care, diligence, and skill in deciding which claims to prosecute, and how far. This duty placed Aimen under an obligation to his client, the debtor's estate, to abandon the preference suit once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate. We emphasize the words "reasonably obvious." The standard is an objective one: did a time come when a reasonable lawyer in Aimen's position would have abandoned the suit? And it allows room for differences in judgment. When abandonment is not the obviously right course, when reasonable professionals could differ over the right course, the professional is not to be penalized, just as a trustee is not to be surcharged for a discretionary judgment that later proves to have been mistaken. *Sherr v. Winkler,* 552 F.2d 1367, 1375 (10th Cir.1977). The present case, however, is one of abuse of discretion. With a cap on the amount recoverable in the preference action, it became certain sometime during 1984 that the action could not yield a benefit commensurate with the unavoidable expenses of the action.

After the remand from the district court, the bankruptcy court cut $23,000 off Aimen's request to reflect his having lost the preference case. That was how he wound up with $85,000, which he complains is too little. The court's reasoning was that Aimen was presumptively entitled to his hours times his hourly fee, provided neither figure was excessive in relation to Aimen's skill and diligence and the intrinsic difficulty of the preference suit, and that other factors bearing on the reasonableness of the fee request, such as lack of success, came into play only later, as grounds for adjusting the presumptive fee upward or downward. This is indeed the approach, called the "lodestar" approach, that is normally taken in cases in which a judicial award of attorney's fees is sought, *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989), including bankruptcy cases. *In re Boddy,* 950 F.2d 334, 337 (6th Cir.1991). Yet in *In re UNR Industries, supra,* 986 F.2d at 210, we cautioned that it is only by analogy that the lodestar approach has been applied in bankruptcy, and that the analogy must not

be pressed too hard. At all events, it plainly was the wrong approach to take here. It ignored Aimen's breach of fiduciary duty and the language of the compensation statute.

██ The next question is the proper remedy for Aimen's breach of his fiduciary obligation to the estate. Fees obtained as a consequence of a breach of fiduciary obligation, even a nonwillful breach (which, so far as appears, this was—we do not impugn Aimen's good faith), may be retained only if, by analogy to claims for quantum meruit, the fiduciary, notwithstanding his breach, conferred a benefit on his principal. *Johnson v. Gudmundsson,* 35 F.3d 1104, 1115–16 (7th Cir.1994); cf. *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268–70, 61 S.Ct. 493, 497–98, 85 L.Ed. 820 (1941); *Maksym v. Loesch,* 937 F.2d 1237, 1246 (7th Cir.1991). Aimen did not do this, and therefore under fiduciary principles he is required to return to the estate the fees that he received after the breach occurred. This is all the fees after the initial $7,000, for that was reasonable compensation for his initial investigation into the merits of the preference claim.

██ Even if we are wrong about the remedy for a breach of fiduciary obligation, wrong even about the applicability of the fiduciary principle to this case, Aimen would still not be entitled to fees for services rendered after it became plain that the preference action would not yield a net gain. The Bankruptcy Code limits professionals' compensation to "*reasonable* compensation for actual, *necessary* services." 11 U.S.C. § 330(a)(1) (emphasis added). Aimen therefore "had an obligation to consider the potential for recovery and balance the efforts required against the results that might be achieved." *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.,* 924 F.2d 955, 961 (9th Cir.1991). None of his services beyond the point we have indicated were necessary, and the reasonable compensation for them therefore could not exceed zero.

We can imagine an argument, based on the hypothetical case presented earlier, that even if Aimen should never have pressed his suit to judgment in the bankruptcy court, once he had that $33,000 judgment he was entitled, perhaps even required, to defend it, provided the expected cost of the defense did not exceed the expected benefit. A counterargument is that he should be required to defend the judgment at his own expense, since he had overspent to obtain it. We need not decide. Of the $85,000 in fees that Aimen was awarded, $48,000 were for his unsuccessful efforts to save the $33,000 judgment on appeal. That was a grossly excessive amount—it would have made the estate worse off even if the estate had won rather than lost the appeal—and he has not offered us an estimate of what a reasonable appellate fee might have been. Indeed, he continues to insist that he has been underpaid.

To summarize, Aimen is entitled to retain no fees beyond the $7,000 that he received in response to his first request for interim fees. *In re Wilde Horse Enterprises, Inc., supra,* 136 B.R. at 844–45. He is entitled to retain this amount not because there was no objection, but because it was a reasonable expenditure necessary to ascertain the actual value of the preference items. He must return the rest of the $85,000 that he has received to the estate, and he is of course entitled to no further award of fees, whether for his efforts in the preference suit or for his efforts to defend the award of fees to him and to obtain additional fees both below and in this court.

The result is harsh. But being a creditor and seeing your claim get eaten by a lawyer is a harsh fate as well. Even after the passage of 11 U.S.C. § 330(a)(1), bankruptcy is not intended to be a feast for lawyers. As we read in *In re Toney,* 171 B.R. 414, 415 (Bankr.S.D.Fla.1994), "absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." Cf. *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1255 (5th Cir.1986). The final compensation order is vacated and the case is remanded for further proceedings consistent with this opinion.

Vacated and Remanded with Directions.