107 F.3d 878
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re TIARA COMPUTER SYSTEMS, INC., a California
corporation, Debtor.
CAMPEAU & THOMAS, Appellant,
v.
TIARA COMPUTER SYSTEMS, INC., a California corporation, Appellee.
 No. 95-17178.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 14, 1997.*
Decided Feb. 27, 1997.
 
 Before: SNEED, LEAVY, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Campeau & Thomas (C & T) appeals the district court's order affirming an award by the bankruptcy court of attorney's fees for services rendered by C & T.
 
 
 3
 C & T was counsel of record for the Official Unsecured Creditors Committee (Committee) in the bankruptcy involving Tiara Computer Systems, Inc. (Tiara). C & T argues that the bankruptcy court erred in basing its fee award on two factual errors. Those were, first, that the bankruptcy court erred in finding that C & T failed to exercise proper professional judgment in its opposition to Tiara's plan of reorganization, and, second, that the bankruptcy court erred in finding that C & T's effort to maintain a pre-filing lien, known as the CCCI lien, could not have benefitted the unsecured creditors.[1]
 
 
 4
 We have reviewed the record and conclude that the district court did not err in affirming the bankruptcy court's fee award. A bankruptcy court is required to award compensation only for those services actually and necessarily rendered. Unsecured Creditors' Committee v. Pugent Sound Plywood, Inc., 924 F.2d 955, 959 (9th Cir.1991); 11 U.S.C. § 330. Moreover, appellate review of an award of attorney's fees under 11 U.S.C. § 330 is deferential. In re Lazar, 83 F.3d 306, 308 (9th Cir.1996). While there was some confusion on the part of the bankruptcy court, it did not impair the validity of the conclusions about which C & T complains.
 
 
 5
 The heart of its complaint is that Tiara's software, 10NET, had a value of perhaps one million dollars which the bankruptcy court improperly discredited. The record does not support C & T's position. It is a fact that the committee never identified a single buyer for the 10NET software. The one million figure appeared in testimony given by a former president of Tiara, Andrei Glasberg, who in June 1994 testified in connection with Tiara's plan of reorganization. The relevant portion of this testimony is as follows:
 
 
 6
 "Q. Did you have any communications with Ardisoft during the year prior to the filing of this bankruptcy case?
 
 
 7
 A. I did as late as November or December.
 
 
 8
 Q. And were you discussing a possible sale of the 10-Net software to Ardisoft at that time?
 
 
 9
 A. I tried to engage their interest at that time in the customer base and in the product to see if, indeed, they would be interested once again in what they were interested [sic] a couple of years earlier.
 
 
 10
 Q. And what price range were you suggesting to them?
 
 
 11
 A. There was no price discussion.
 
 
 12
 Q. What price range did Tiara have in mind or did you have in mind?
 
 
 13
 A. Probably somewhere around a million dollars.
 
 
 14
 Q. Do you believe that there are still interested purchasers for either the hardware or software component of 10-Net's [sic] business?
 
 
 15
 A. I believe so, yes."
 
 
 16
 The bankruptcy court rejected the testimony of Glasberg, which C & T argues supports a possible one million dollar value of 10NET. In doing so the court noted, "the negotiations reported by Mr. Glasberg were at least a year old by the time Tiara filed its Chapter 11." On that basis the bankruptcy court concluded that the Committee's reliance on "a year-old offer to establish the [current] value of technology is not a responsible exercise of professional judgment."
 
 
 17
 To the extent that this conclusion refers either to the time of Glasberg's testimony, or his efforts to dispose of Tiara's hardware, in which it possibly had no proprietary interest, it is in error.[2] The error is harmless, however. To the extent it refers to the possible interest of Ardisoft in acquiring the 10NET software "a couple of years earlier," it was accurate. The inescapable fact is that the 10NET software had no presently ascertainable market value by mid-1994. Sherman Tuan, who succeeded Glasberg as president of Tiara, testified that the Tiara technology had a zero liquidation value.
 
 
 18
 As a result the bankruptcy court confirmed Tiara's modified plan of reorganization, despite its concerns about the feasibility of the plan, and avoided creditors' blanket lien on all Tiara's assets. Thereafter, C & T sought $34,576 in fees and $1,448.93 in costs. Tiara objected and the bankruptcy court reduced the fees to $13,087.56 and allowed the $1,448.93 in costs.
 
 
 19
 To receive all of its requested fees, C & T needed to demonstrate that its work was both necessary and reasonable. See Unsecured Creditors' Committee, 924 F.2d at 959; see also In re Matter of Taxman Clothing, 49 F.3d 310, 315 (7th Cir.1995). C & T suspected Tiara of concealing the value of its technology for the benefit of new investors. Under the direction of C & T, the Committee pursued this suspicion vigorously, but unreasonably and to the near exclusion of all other issues. Scott Goodsell, an attorney with C & T, himself argued that the Committee's desire to recognize the value of the 10NET software was the "rallying cry of the whole case."
 
 
 20
 The Committee forced Tiara to amend its disclosure statement to include the Committee's position that 10NET was worth $250,000 to $500,000, though Tiara knew this information to be misleading. By obscuring the issues and misrepresenting several facts in its May 20, 1994 letter to creditors, the Committee caused creditors to doubt whether Tiara had formulated its plan in good faith. The Committee's efforts led several creditors to oppose Tiara and required that plan confirmation be conducted on a cramdown basis under 11 U.S.C. § 1129, driving up legal fees and diluting the estate. The Committee's persistence eventually spurred Tiara to modify its plan to provide the Committee with the option to purchase 10NET for its book value.[3] This should have closed the door on the Committee's suspicions. However, seemingly undaunted, the Committee pressed on.
 
 
 21
 C & T could not believe that 10NET, which Tiara purchased in 1991 for four million dollars, was now worth only $55,000. Perhaps C & T was justified in its initial suspicion about the precipitous decline in Tiara's assets, but mere suspicion is not enough. C & T should have obtained reliable information about the liquidation value of Tiara's assets prior to having the Committee object to Tiara's plan. See Unsecured Creditors Committee, 924 F.2d at 958-59 (recognizing an attorney's obligation to calculate the probable benefit of his actions). C & T knew or ought to have known that Tiara's technology had lost its value.
 
 
 22
 The bankruptcy court allowed for twenty-five percent of C & T's requested fees and costs because, as the court said, "certain time was required to thoughtfully review and consider these issues." The reduction did not constitute an abuse of discretion.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The lien was given by Tiara, on behalf of all creditors, to Commercial Collection Consultants, Inc. (CCCI) as part of a failed effort to avoid bankruptcy
 
 
 [2]
 Glasberg testified that a Hong Kong company, High Technology, had submitted a written offer to Tiara for its hardware technology approximately one year prior to the filing of the bankruptcy court's decision on C & T's fee. However, significant questions had been raised during the confirmation hearing as to whether Tiara had a propietary interest in its hardware
 
 
 [3]
 C & T argued, in connection with its fee request, that the Committee did not want the option. This seems a strange revelation given the Committee's insistence that 10NET had a hidden value possibly in excess of one million dollars. Nonetheless, the Committee never exercised the option to purchase 10NET