EDWARD C. PRADO, Circuit Judge,
specially concurring: *
Even though we find no error in the bankruptcy court’s use of the Pro-Snax standard to resolve the attorney fee application in this case, I write separately to note that the Pro-Snax standard may be *703 misguided. It appears to conflict with the language and legislative history of § 330, diverges from the decisions of other circuits, and has sown confusion in our circuit.
The plain language of § 330 runs counter to Pro-Snax’s holding that only services that produce an actual benefit are compensable. Section 330 gives a bankruptcy court discretion to determine the amount of reasonable compensation. But the statute also constrains that discretion by requiring the court to “tak[e] into account” a set of listed factors, including “whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered.” 11 U.S.C. § 330(a)(3)(C) (emphasis added).
The statute reinforces this point in an accompanying section: a court must disallow any compensation when “the services were not reasonably likely to benefit the debtor’s estate or necessary to the administration of the case.” § 330(a)(4)(A)(ii)(I); see In re ASARCO, L.L.C., 751 F.3d 291 (5th Cir.2014) (“Section 330 states twice, in both positive and negative terms[,] that professional services are compensable only if they are likely to benefit a debtor’s estate or are necessary to case administration.” (citation omitted)); In re Ames Dep’t Stores, Inc., 76 F.3d 66, 71 (2d Cir.1996) (referring to “reasonably likely to benefit the debtor’s estate” as an “inverse construction” of § 330(a)(3)(C)), abrogated on other grounds by Lamie v. U.S. Trustee, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Read together, a court may compensate an attorney for services that are “reasonably likely to benefit” the estate and adjudge that reasonableness “at the time at which the service was rendered.”
Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual benefit. “Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made.” In re Taxman Clothing Co., 49 F.3d 310, 313 (7th Cir.1995). The statute permits a court to compensate an attorney for any activities that were “necessary,” but also for any good gambles — that is, services that were objectively reasonable at the time they were made — even when those gambles do not produce an “identifiable, tangible, and material benefit.[1] What matters is that, prospectively, the choice to pursue a course of action was reasonable.[2]
The legislative history of § 330 provides additional support for this reading. WTien Congress enacted § 330 in 1978, it relaxed the previously stringent standard bankruptcy courts applied in reviewing professional fee awards. 3 Collier on Bankrwpt- *704 cy ¶ 330.LH[4] (16th ed.2014). Under the old regime, our court enforced a “strong policy ... that estates be administered as efficiently as possible.” In re First Colonial Corp. of Am., 544 F.2d 1291, 1299 (5th Cir.1977) (citations omitted), superseded by statute, 11 U.S.C. § 830. This policy originated in the idea that “[s]ince attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court, they should not expect to be compensated as generously for their services as they might be were they privately employed.” Id. (citation omitted); see also Mass. Mut. Life Ins. Co. v. Brock, 405 F.2d 429, 432-33 (5th Cir.1968) (holding that the interest of the public — especially the debtor and creditors — could limit compensation to a debtor’s counsel), superseded by statute, 11 U.S.C. § 330.
But “[i]n enacting section 330, Congress intended to move away from doctrines that strictly limited fee awards” and instead provide compensation “commensurate with the fees awarded for comparable services in non-bankruptcy cases.” In re UNR Indus., Inc., 986 F.2d 207, 208-09 (7th Cir.1993) (citing, inter alia, H.R.Rep. No. 95-595, at 329-30 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6286); see also 3 Collier on Bankruptcy ¶ 330.03[a][3]. To that end, § 330 instructed courts to award “reasonable compensation” for “actual, necessary services” “based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Code].” 11 U.S.C. § 330(a). Congress took a further step in 1994 when it “codif[ied] many of the factors previously considered by courts in awarding compensation and reimbursing expenses.” 3 Collier on Bankruptcy ¶ 330.LH[5]; see Pub.L. No. 103-394, § 224, 108 Stat. 4106 (1994).[3] In particular, Congress added the language at issue here: 11 U.S.C. §§ 330(a)(3)(C) & 330(a)(4)(A).
The drafting history of those provisions suggests that Congress considered and specifically rejected an actual benefit test. The Senate version contained the seed of the eventual guidelines for reasonable compensation under § 330. See S. 540, 103d Cong. § 309 (as reported by S. Comm, on the Judiciary, Oct. 28, 1993). The Bill reported out of the Senate Judiciary Committee differed in at least one important respect from the eventual Act, however. That Senate draft only instructed courts to consider “whether the services were necessary in the administration of or beneficial toward the completion of a case under [the Bankruptcy Code].” Id. After adopting a floor amendment, however, the Senate added the words “at the time at which the service was rendered” after “beneficial.” See 140 Cong. Rec. 8383 (1994) (setting out amendment 1645 to S. 540, April 21, 1994); S. 540, 103d Cong. § 310 (as passed by Senate, April 26, 1994); see also Lamie, 540 U.S. at 539-40, 124 S.Ct. 1023 (discussing amendment 1645).[4] The House version of the legisla *705 tion did not include any guidelines for determining the reasonableness of attorney compensation. See generally H.R. 5116, 103d Cong, (as reported by H. Comm, on the Judiciary, October 22,1994). The legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual benefit requirement determinable by a court only at the completion of the case.
Besides contravening the plain effect of § 330’s language, the actual benefit test of Pro-Snax has put our circuit in unnecessary conflict with our sister circuits. In light of the plain language of § 330(a)(4)(A), the Second, Third, and Ninth Circuits have rejected the actual benefit test required by Pro-Snax. In In re Ames Department Stores, Inc., the Second Circuit specifically rejected an approach that would make fee award “contingent upon a showing of actual benefit to the estate,” opting instead to give effect to the statute’s “reasonably likely to benefit the estate” standard. 76 F.3d at 71. The Third Circuit rejected the very approach our court adopted in Pro-Snax, concluding that it departed from the statute by imposing a “heightened standard” and requiring evaluation “by hindsight.” In re Top Grade Sausage, Inc., 227 F.3d 123, 132 (3d Cir.2000) abrogated on other grounds by Lamie, 540 U.S. 526, 124 S.Ct. 1023. Finally, the Ninth Circuit held that § 330(a)(4)(A) superseded its past precedent, which had “requir[ed] that the services actually provide an ‘identifiable, tangible and material benefit to the [debt- or’s] estate.” ’ In re Smith, 317 F.3d 918, 926 (9th Cir.2002) (quoting In re Xebec, 147 B.R. 518, 523 (B.A.P. 9th Cir.1992)). In addition, the Seventh Circuit has applied a similar rule, without specifically relying on the post-1994 guidelines. See In re Taxman Clothing Co., 49 F.3d at 314-16 (holding that the bankruptcy court abused its discretion in granting a fee award to an attorney whose preference action did not have a reasonable likelihood of benefiting the estate).
While Pro-Snax purported to consider the post-1994 guidelines of § 330(a), its lone citation for its actual benefit test, In re Melp, interpreted the pre-1994 version of § 330. See 179 B.R. at 639 (quoting pre-1994 language). Indeed, the only other circuit precedents to apply an actual benefit requirement came to that conclusion prior to 1994 or based entirely on pre-1994 precedent for determining “reasonable compensation.” See In re Kohl, 95 F.3d 713, 714 (8th Cir.1996) (“[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate.”) (quoting In re Reed, 890 F.2d 104, 106 (8th Cir.1989)); In re Lederman Enters., Inc., 997 F.2d 1321, 1323 (10th Cir.1993) (“An element of whether the services were ‘necessary’ is whether they benefited the bankruptcy estate.”); Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 883 (11th Cir.1990) (interpreting pre-1994 § 330 as requiring that attorney’s appeal bring a benefit to the estate). As discussed above, though, whereas the pre-1994 language did not provide guidance on whether to consider the reasonable likelihood a service would benefit the estate, the post-1994 language clearly foreclosed an actual benefit test by requiring that the court evaluate the likelihood of benefit to the estate at the time the service was rendered.
The Pro-Snax actual benefit test has led to confusion among the courts of our circuit. According to one Fifth Circuit bankruptcy practitioner, “the Pro-Snax decision is of constant discussion and concern.” *706 William L. Medford, Further Evolution of Professional Compensation Under Pro-Snax the New and Improved Standard for Getting Paid, Am. Bankr.Inst. J., July 2012, at 16. As one bankruptcy court observed in its survey of post-Pro-Snax rulings:
[A]ll courts interpreting Pro-Snax have reached the conclusion that some sort of retrospective analysis is required. Lower courts have adopted differing views of what type of retrospective analysis should be employed and have disagreed whether a prospective analysis may be considered in determining whether Pro-Snax is satisfied.
In re Broughton Ltd. P’ship, 474 B.R. 206, 209-10 n. 5 (Bankr.N.D.Tex.2012) (collecting cases). So, for example, one district court interpreted the Pro-Snax requirement as a threshold issue of entitlement to compensability under § 330(a)(1)(A), not a gloss on the guidelines for reasonable compensation under § 330(a)(3) and (a)(4). Kaye v. Hughes & Luce, LLP (In re Gadzooks, Inc.), No. 3:06-CV-0186-3 B, 2007 WL 2059724, *9 (N.D.Tex. July 13, 2007). Yet Pro-Snax did not purport to alter the threshold compensability of services by interpreting “necessary” services to include only those that result in an actual benefit to the estate. By contrast, in In re Broughton characterized Pro-Snax as a practical “problem” and contorted Pro-Snax to conclude that it permits a fee award to “a professional [who] was justifiably pursuing a legitimate, realizable goal of the fiduciary client.” 474 B.R. at 213, 218. The splintered approaches to applying Pro-Snax underscore the difficulty of squaring that decision with the statute, and the practical importance of doing so.
We note that application of the § 330(a) standard without Pro-Snax would probably lead to the same result in this ease. The only fees that B & N adequately challenge on appeal — amending schedules and statements of financial affairs — were not reasonably likely to benefit the estate even when counsel rendered those services. We also note that overturning the holding on attorney’s fees in Pro-Snax would not alter that case’s principal holding, affirmed by the Supreme Court in Lamie, that debtor’s attorneys may not recover fees for services rendered after the case was converted to an involuntary Chapter 7 bankruptcy.
For these reasons, we urge reconsideration of the standard in Pro-Snax by this court sitting en banc.

 Judges Reavley and Owen join this special concurrence.

. One could infer that this language also limits recovery for unreasonable services. A benefit conferred on the basis of a bad gamble would not be "reasonably likely to benefit the estate at the time at'which the service was rendered.” Therefore the "actual benefit” test is both over- and under-inclusive under the terms of the statute: it fails to reward good gambles that do not pay off; but it also rewards bad gambles that did pay off even when the risk of failure and the cost of the service made that gamble unreasonable.

. In re Taxman Clothing Co. provides a concrete example:
Suppose that [debtor] had been seeking to recover ... $330,000 and that he had had a 90 percent chance of winning a judgment for that amount and successfully defending the judgment in this court. An expenditure of $85,000 in attorney’s fees would not be unreasonable when the expected benefit was $297,000 ($330,000 x .9), so if the attorney performed competently but simply was unlucky and lost he would have a good claim for his fees.
49 F.3d at 313.

. For example, our circuit was among the first to conclude that the factors developed for determining reasonable attorney’s fees in the non-bankruptcy context were “equally useful” in assessing bankruptcy attorney’s fees. First Colonial, 544 F.2d at 1299 (applying factors from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), to bankruptcy fee determination). Those same factors formed the foundation for the 1994 revision. See 3 Collier on Bankruptcy ¶ 330.LH[5], n. 12.

. Unlike in Lamie, where the petitioner contended that a deletion introduced by amendment 1645 was a "scrivener’s error,” a later floor speech by Senator Howard Metzen-baum, the amendment's proponent, suggests that the added language was intended. See 140 Cong. Rec. 28753 (statement of Sen. Metzenbaum) (reiterating that the factors in- *705 elude "whether the services were beneficial at the time they were rendered”).