EDWARD C. PRADO, Circuit Judge:
This case concerns a bankruptcy court’s order reducing the fees a debtor’s counsel received under 11 U.S.C. § 330. On May 13, 2010, on the eve of a major state court judgment against him, Debtor Clifford Woerner (“Woerner”)[1] filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Appellant Barron & Newbur-ger (“B & N”), a law firm, represented Woerner in his Chapter 11 bankruptcy. On April 20, 2011, the bankruptcy court converted the case to Chapter 7. Its services terminated, B & N filed an application for fees in excess of $130,000. The bankruptcy court allowed approximately $20,000 and disallowed the remainder, finding that the additional fees were unreasonable. The district court affirmed. B & N appeals, contending that the bankruptcy court misapplied Fifth Circuit precedent and 11 U.S.C. § 330 in reducing the fees awarded to it. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. Events Before Woerner Filed for Bankruptcy
In 2006, Woerner and Texas Skyline, Ltd. (“Texas Skyline”) formed a limited partnership for the purpose of a real estate venture. Within the partnership, DPRS — a company Woerner owned — was the sole general partner, Woerner was a limited partner with a 49.99% interest in the partnership, and Texas Skyline was the sole investor and a limited partner in the project. Over the course of the next three years, Woerner misappropriated funds from the partnership for personal use. When Texas Skyline discovered Woerner’s activities, it sued him in state court for breach of the partnership agreement and breach of fiduciary duties. The case proceeded to a bench trial on April 27, 2010. After the parties rested, the state court announced an oral ruling in favor of Texas Skyline and set a remedies hearing for May 14, 2010.
Woerner and his state-court trial counsel met with B & N on May 4, 2010 to discuss filing for bankruptcy. Woerner was “agitated” and wanted to find counsel that would “stand up to the Texas Skyline parties,” although “he wanted to make sure that every creditor with legitimate claims against him was paid.” B & N agreed to the representation and filed Woerner’s voluntary petition for Chapter 11 bankruptcy relief on May 13-the night before the state-court remedies hearing. That filing triggered the Bankruptcy Code’s automatic stay provision, which brought the state-court proceeding to a halt. See 11 U.S.C. § 362(a).
B. B & N Litigates Woerner’s Chapter 11 Case
In the ensuing eleven months, B & N provided services that it claimed were worth $134,800 in legal fees. These services included the filing of a mandatory disclosure statement. On May 18, 2010, Woerner filed mandatory disclosure documents with the bankruptcy court — namely, schedules and a statement of financial affairs.
These services also included efforts to defend Woerner in adversary proceedings to prevent Woerner from discharging lia *697 bilities. On August 4, 2010, Texas Skyline initiated an adversary proceeding with the bankruptcy court under 11 U.S.C. 523(a)(4) for a breach of fiduciary duty. Texas Skyline then fought to lift the stay of the state court judgment. Woerner contested and lost, and the stay of state court proceedings was lifted. Woerner also contested adversary proceedings brought by John Baker II (“Baker”), one of the other active creditors in this case. On November 2, 2010, Woerner filed Amended Schedules (b) and (c) and also amended his Statement of Financial Affairs.
B & N helped Woerner negotiate with his creditors. Woerner and the adversarial creditors agreed to mediation with a bankruptcy judge. Talks with Texas Skyline broke down, but on December 17, 2010, B & N filed a Joint Motion to Compromise with the bankruptcy court, which B & N maintained would have resolved this case had it completely settled. Yet Baker insisted that the settlement was merely a proposal, objected to it and refused to execute it. For these negotiation services, B & N sought over $6,000. See infra Part 1(D).
B & N also investigated the concealment of some of Woerner’s assets and subsequently amended Woerner’s financial disclosures to include approximately $9,000 of additional personal goods, including investments, jewelry, firearms, and fur coats that were not originally disclosed. This concealment prompted Baker to move to convert Woerner’s case from a Chapter 11 reorganization to a Chapter 7 trustee-administered liquidation. See 11 U.S.C. § 1112(b)(1) (requiring the bankruptcy court to convert or dismiss a Chapter 11 case upon finding “cause”). Texas Skyline moved to intervene in the motion to convert. B & N litigated Woerner’s attempts to press for a motion to approve the settlement and oppose the motion to convert. The billing records show that the firm (1) prepared a motion to sell some of Woer-ner’s personal property for the purpose of funding an appeal from the state-court judgment; (2) started investigating potential causes of action against Texas Skyline and Baker; (3) drafted a disclosure statement and reorganization plan; and (4) deposed a representative from Texas Skyline about potential mismanagement of partnership assets.
C. Woerner’s Case Is Converted to Chapter 7, Ending B & N’s Employment
The bankruptcy court conducted a hearing on the pending motions, denying the motion to approve settlement and granting the motion to convert on April 20, 2011. As the bankruptcy court summarized in its oral ruling on the fee application, “the Court found that it was appropriate to convert this case to Chapter 7 because the Court was of the opinion ... that [Woer-ner] w[as] not forthright as a Debtor[] under the Bankruptcy Code in terms of listing [his] assets and giving proper evaluations.” On September 3, 2011, B & N filed an application for approximately $134,000 in fees under § 330. Following the U.S. Trustee’s objection, B & N amended its fee application. B & N ultimately sought $130,656.50 in fees, and $5,793.37 in expenses. The Trustee renewed its objection to the fees. Skyline also objected, arguing that all of the fees were unreasonable because (1) Woerner never had the means to fund a Chapter 11 reorganization and (2) B & N’s actions were dilatory and required creditors to incur unnecessary attorneys’ fees.
D. The Bankruptcy Court Disallows Most of B & N’s Requested Fees
The bankruptcy court then conducted a hearing on the fee request. B & N offered testimony from Woerner’s nonbankruptcy counsel and two attorneys from B & N to prove that (1) Woerner brought the case *698 for a legitimate purpose and (2) the litigation costs were driven up by Texas Skylines’s alleged intransigence.
The bankruptcy court took the fee application under advisement and entered an oral ruling on April 11, 2012. Citing In re Pro-Snax Distributors, Inc., 157 F.3d 414 (5th Cir.1998), the court explained that, for a service to be compensable under § 330, fee applicants must prove that the service resulted in an “identifiable, tangible, and material benefit to the estate.” Id. at 426. Applying that standard, the bankruptcy court awarded the expenses in full, but only $19,409.00 in fees, an 85% reduction. The bankruptcy court arrived at $19,409.00 by considering separately each category of fees (such as case administration, resisting a motion to lift the stay, preparing bankruptcy schedules, and similar categories), granting some in whole, some in part, and denying others. Most of the disallowed fees were denied due to B & N’s lack of success. Specifically, the bankruptcy court found much of B & N’s billed time was not of identifiable benefit to the estate.
The following table (based on U.S. Trustee’s Br. 16-17) summarizes the bankruptcy court’s findings:
CATEGORY FEE REQUESTED FEE ALLOWED FINDING
Asset Analysis and Recovery Fees for initial analysis reasonable 8,692 1,500 Fees for subsequent investigations unreasonable Fees for Texas Skyline deposition not beneficial to the estate
Alternative Dispute Resolution 6,647 6,647 Reasonable
Case Administration 46,532 5,000 Fees for mandatory meetings and filings reasonable Fees for litigating conversion motion and settlement motion not beneficial to the estate
Claims Determination 14,301 0 No benefit to the estate
Dischargeability 25,170 0 No benefit to the estate
Disclosure Statement and Plan 13,075 0 No material benefit to the estate
Employment and Fees 3,172 0 No material benefit to the estate
Filing of Schedules and Statement of Financial Affairs 5,000 2,500 Redundant with asset analysis, unreasonable
Lift Stay 3,810 1,000 Abnormally high
Business Operations 562 562 Reasonable
Client Communications 2,200 2,200 Reasonable
Financing 225 0 Unreasonable
Sale Use and Lease of Assets 1,252 0 No benefit to the estate
TOTAL $130,638 $19,409
B & N then moved to certify a direct appeal to the Fifth Circuit. In denying the motion, the bankruptcy court also noted its ruling was informed by the bad conduct of the Debtors themselves, which *699 should have lead B & N to withdraw from the case sooner than it ultimately did. As the U.S. Trustee pointed out at the time, “[T]he only issue that would be advanced is whether or not Barron and Newburger is entitled to get paid fees in a case that is hopelessly insolvent.”
The district court entered its final order affirming the bankruptcy court on January 17, 2013. It ruled that the record supported finding that B & N’s fees were unreasonable under § 330 and Pro-Snax. According to the district court, the record showed that “this bankruptcy proceeding was doomed at the outset, and arguably could not have been filed in good faith under Chapter 11.”
II. JURISDICTION AND STANDARD OF REVIEW
B & N timely filed a notice of appeal from the bankruptcy court’s order to the United States District Court for the Western District of Texas under 28 U.S.C. § 158(c)(1)(B) and Federal Rule of Bankruptcy Procedure 8002(a). The district court had jurisdiction over Woerner’s Chapter 11 bankruptcy case under 28 U.S.C. §§ 157 and 1334. We have jurisdiction over this timely appeal from the district court’s order under 28 U.S.C. § 158(d)(1) and Federal Rule of Appellate Procedure 4(a)(1)(B).
This court reviews the district court’s decision “by applying the same standard of review to the bankruptcy court’s conclusions of law and findings of fact that the district court applied.” In re Cahill, 428 F.3d 536, 539 (5th Cir.2005) (citation omitted). Accordingly, this court reviews the bankruptcy court’s legal conclusions de novo and its findings of fact for clear error. Id. (citations omitted). By contrast, this court reviews the bankruptcy court’s award of attorneys’ fees for abuse of discretion. Id. (citing In re Coho Energy, Inc., 395 F.3d 198, 204 (5th Cir.2004); In re Barron, 325 F.3d 690, 692 (5th Cir.2003)). “An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous.” Id. (citing In re Evangeline Ref. Co., 890 F.2d 1312, 1325 (5th Cir.1989)).
III. DISCUSSION
B & N argues that the district court erred in two ways: first, in applying the wrong standard for awarding attorney’s fees and, second, in misapplying that standard. We address these issues in turn.
A. Whether the Bankruptcy Court Used the Proper Standard
B & N contends that the court applied the wrong standard for awarding attorney’s fees under § 330 by using a so-called “hindsight” test based on this court’s decision in Pro-Snax. Instead, B & N argues that its fees would have been allowed under either of its two proposed alternative tests: the “business judgment approach” and the “prospective approach.”

1. Statutory Framework

a. Reorganization Under Chapter 11 of the Bankruptcy Code

When a debtor commences a bankruptcy case, a legal entity known as the “estate” is created. 11 U.S.C. § 541(a). The estate contains all of the debtor’s property, subject to exceptions not applicable here. Id. When a debtor files a case to reorganize under Chapter 11, the debtor becomes the debtor-in-possession of the estate and takes on the rights, powers, and fiduciary duties of a trustee. Id. §§ 1101, 11061108; see CFTC v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The debtor-in-possession retains control over the prop *700 erty of the estate and must repay creditors according to the terms of a reorganization plan. Id. § 1123. The proponent of a reorganization plan — usually, but not necessarily, the debtor-in-possession — must provide a court-approved disclosure statement that contains “adequate information” about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an “informed judgment” about the plan. Id. § 1125. Creditors may accept or reject the reorganization plan in a special voting process governed by the Bankruptcy Code. Id. § 1126.
If the creditors accept the reorganization plan, it must then be confirmed by the bankruptcy court. Id. § 1129. The confirmation of the reorganization plan typically brings the bankruptcy case to an end. Id. § 1141.

b. Compensation to Professionals Under Chapter 11

The debtor-in-possession may ask the bankruptcy court for permission to employ professionals, including attorneys, to assist the debtor-in-possession with the reorganization of the bankruptcy estate. Id. § 327.
Congress has enacted a uniform scheme for retaining and compensating such court-authorized attorneys under Id. §§ 327-330. First, under § 327(a), the debtor must get the bankruptcy court’s approval to employ the attorney. Id. § 327(a). Then, under § 330(a), an attorney that has been employed under § 327(a) may request “reasonable compensation for actual, necessary services rendered.” Id. § 330(a)(1)(A). The bankruptcy court may exercise its discretion, upon motion or sua sponte, to “award compensation that is less than the amount requested.” Id. § 330(a)(2). Section 330(a)(3) further directs courts to “consider the nature, the extent, and the value of’ the legal services provided when determining the amount of reasonable compensation to award, “taking into account all relevant factors, including,” but not limited to:
(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; [and]
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
Id. § 330(a)(3).
Section 330 further lists those services for which a court may not provide compensation:
(4)(A) Except as provided in subpara-graph (B), the court shall not allow compensation for—
(i) unnecessary duplication of services; or
(ii) services that were not-
(I) reasonably likely to benefit the debtor’s estate; or
(II) necessary to the administration of the case.
Id. § 330(a)(4)(A).

2. Fifth Circuit Case Law: Pro Snax

The underlying bankruptcy case at issue in Pro-Snax was initiated when creditors filed an involuntary Chapter 7 bankruptcy petition against the debtor. Pro-Snax, 157 F.3d at 416. The bankruptcy court later converted the case to Chapter 11 upon the debtor’s consent and appointed a *701 Chapter 11 trustee soon thereafter. Id. The debtor proposed a plan of reorganization, but the bankruptcy court denied confirmation of the plan based largely on the objections raised by creditors. Id. at 416-17. The case was then converted back to a Chapter 7 proceeding. Id. at 417.
The law firm of Andrews and Kurth (“A & K”) provided legal services to the debtor both before and after the case had been converted to Chapter 11. Id. at 416-17. Upon A & K’s fee application, the bankruptcy court awarded A & K $30,000 in fees and $7,600 in expenses. Id. at 417 n. 4. The district court reversed the award on the ground that § 330 precluded A & K from being compensated from the assets of the estate for work performed after the Chapter 11 trustee had been appointed. Id. at 419. The district court remanded the case to the bankruptcy court, however, for a recalculation of fees in light of the creditors’ concession that A & K was entitled to compensation for the work it performed before the Chapter 11 trustee was appointed. Id. at 419. In so doing, the district court instructed the bankruptcy court to consider the “backdrop of the American Rule, any statutory exceptions to that rule applicable in this case, and the usual standards for the award of fees to be paid by other parties to the litigation.” Family Snacks, Inc. v. Andrews & Kurth, L.L.P. (In re Pro-Snax Distribs., Inc.), 212 B.R. 834, 839 (N.D.Tex.1997).
On appeal, our court divided its discussion of the merits into two parts. It first took up the issue of “whether a Chapter 11 debtor’s attorney may be compensated for work done after the appointment of a trustee under § 330(a) of the Bankruptcy Code.” Pro-Snax, 157 F.3d at 416. After considering the statutory language of § 330, congressional intent, and public policy, the Court ultimately concluded that § 330, on its face, clearly precludes any award of fees to a debtor’s attorney for that attorney’s work performed after a Chapter 11 trustee has been appointed. Id. at 425-26. The Supreme Court later vindicated this holding in Lamie v. U.S. Trustee, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).
In the second, briefer part of the opinion, of relevance here, we discussed the applicable standard to evaluate A & K’s fee application for the services it rendered to the debtor before the trustee was appointed. This court considered two possible tests advocated by the parties. A & K urged the use of a “reasonableness” test — “whether the services were objectively beneficial toward the completion of the case at the time they were performed.” Id. at 426 (emphasis added). The creditors, on the other hand, advanced a hindsight approach — whether the services “resulted in an identifiable, tangible, and material benefit to the bankruptcy estate.” Id. (emphasis added). With little analysis or explanation — the opinion cites only one case in support of its position, In re Melp, Ltd., 179 B.R. 636, 640 (E.D.Mo.1995) — we adopted the stricter “hindsight” or “material benefit” measure. The court expressed its reluctance “to hold that any service performed at any time need only be reasonable to be com-pensable.” Id.

3. Analysis

The bankruptcy court below relied on the holding in Pro-Snax in making its ruling on the fee application. In its oral ruling on the fee application, the court emphasized that “[Chapter 11 attorney’s] fees are at risk if there is not the attendant material benefit to the estate.” As the district court succinctly put it: “[B & N] argues this [reliance on Pro-Snax \ was error, but Pro-Snax is binding, Fifth Circuit precedent.”
*702 B & N attempts to avoid the holding of Pro-Snax by arguing that the hindsight test is merely one interpretation of Pro-Snax. But, as the U.S. Trustee points out, interpreting Pro-Snax to require a reasonableness test would be to “authorize something that the prior panel flatly prohibited” and is not “any different from overturning the decision.” See Pro-Snax, 157 F.3d at 426. Because we are still bound by the previous panel’s “explications of the governing rules of law,” we cannot overrule past precedent. Gochicoa v. Johnson, 238 F.3d 278, 287 n. 11 (5th Cir.2000) (“[A]s a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.” (citation and internal quotation marks omitted)); see also Jacobs v. Nat’l Drug Intelligence Ctr., 548 F.3d 375, 378 (5th Cir.2008) (“It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel’s decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court.”).
Further, any argument that Pro-Snax was wrongly decided is irrelevant to the key question before us: whether the bankruptcy court erred by applying the wrong standard. Just as the district court said, whether “Pro-Snax was a wrongly decided, errant opinion ... is an argument properly addressed to higher tribunals,” but Pro-Snax is still the governing standard. Therefore, based on our review of the statutory framework and this court’s decision in Pro-Snax, we conclude that the bankruptcy court did not apply the wrong standard and thus did not abuse its discretion.
B. Whether the Bankruptcy Court Erred in Finding that B & N Was Entitled to Only a Small Subset of the Fees Requested
B & N further contends that the court abused its discretion by not awarding fees for filing and amending schedules, which it contends provided an identifiable, tangible, and material benefit and therefore should be awarded under any standard.[2] B & N argues that the bankruptcy court did not reward the firm for necessary activity—namely, amending schedules and statements of financial affairs, citing 11 U.S.C. § 521(a)(1). The bankruptcy court reached the conclusion that B & N could not recover for these services because “[d]ebtor’s counsel should withdraw and not run up fees.” Or as the U.S. Trustee brief glosses it, “it was not reasonable [for] the estate to foot the bill for the debtor’s overt misconduct.” More importantly, nothing in the text of § 330 or Pro-Snax suggests that these fees be exempt from the bankruptcy court’s discretion to determine reasonable compensation.
Therefore, we hold that the district court did not abuse its discretion in denying these fees.
IY. CONCLUSION
For the foregoing reasons, we AFFIRM the bankruptcy court’s ruling on B & N’s fee application.

. Woerner filed a joint petition with his wife Gail Woerner. Because Gail Woerner was subsequently dismissed from the case, we refer to Woerner as the only debtor.

. We do not consider any other fees that B & N says it seeks on appeal. B & N only supports its arguments on this particular category of fees and inadequately briefed the others. Therefore, we consider the arguments about the other fees effectively waived.