# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 13-50075

—————

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2015

Lyle W. Cayce
Clerk

In the Matter of:  CLIFFORD J. WOERNER; GAIL S. WOERNER,

Debtors

———————————

BARRON & NEWBURGER, P.C.,

Appellant

v.

TEXAS SKYLINE, LIMITED; PECOS & 15TH, LIMITED; UNITED STATES TRUSTEE; SKYLINE INTERESTS, L.L.C.,

Appellees

———————————

Appeals from the United States District Court
for the Western District of Texas

———————————

Before STEWART, Chief Judge, REAVLEY, JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON and COSTA, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This case concerns a bankruptcy court's order reducing the fees a debtor's counsel received under 11 U.S.C. § 330.  On May 13, 2010, on the eve

No. 13-50075

of a major state-court judgment against him, Debtor Clifford Woerner[1] filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Appellant Barron & Newburger ("B & N"), a law firm, represented Woerner in his Chapter 11 bankruptcy. On April 20, 2011, the bankruptcy court converted the case to Chapter 7.

Its services terminated, B & N filed an application for fees in excess of $130,000. The bankruptcy court allowed approximately $20,000 and disallowed the remainder, finding that the additional fees were unreasonable. The district court affirmed. B & N appealed, contending that the bankruptcy court misapplied Fifth Circuit precedent and 11 U.S.C. § 330 in reducing the fees awarded to it. In an opinion issued on July 15, 2014, a panel of this Court affirmed the district court's judgment. *In re Woerner*, 758 F.3d 693, 702 (5th Cir. 2014). However, all three members of the panel specially concurred to call for en banc reconsideration of *In re Pro–Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998), the opinion interpreting § 330 that controlled the appeal. *In re Woerner*, 758 F.3d at 702–06 (Prado, J., specially concurring).

We granted rehearing en banc to reexamine our decision in *Pro–Snax*. *In re Woerner*, 771 F.3d 820 (5th Cir. 2014) (per curiam). We now recognize that the retrospective, "material benefit" standard enunciated in *Pro–Snax* conflicts with the language and legislative history of § 330, diverges from the decisions of other circuits, and has sown confusion in our circuit. Correspondingly, we overturn *Pro–Snax*'s attorney's-fee rule[2] and adopt the prospective, "reasonably likely to benefit the estate" standard endorsed by our sister circuits.

---

[1] Woerner filed a joint petition with his wife Gail Woerner. Because Gail Woerner was subsequently dismissed from the case, we refer to Woerner as the only debtor.

[2] We leave undisturbed the remainder of that opinion.

No. 13-50075

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.     Events Before Woerner Filed for Bankruptcy

In 2006, Woerner and Texas Skyline, Ltd. formed a limited partnership for the purpose of undertaking a real estate venture.  Within the partnership, DPRS—a company Woerner owned—was the sole general partner, Woerner was a limited partner with a 49.99% interest in the partnership, and Texas Skyline was the sole investor and a limited partner in the project.  Over the course of the next three years, Woerner misappropriated funds from the partnership for personal use.  When Texas Skyline discovered Woerner's activities, it sued him in state court for breach of the partnership agreement and breach of fiduciary duties.  The case proceeded to a bench trial on April 27, 2010.  After the parties rested, the state court announced an oral ruling in favor of Texas Skyline and set a remedies hearing for May 14, 2010.

Woerner and his state-court trial counsel met with B & N on May 4, 2010 to discuss filing for bankruptcy.  B & N agreed to the representation and filed Woerner's voluntary petition for Chapter 11 bankruptcy relief on May 13—the night before the state-court remedies hearing.  That filing triggered the Bankruptcy Code's automatic stay provision, which brought the state-court proceeding to a halt.  *See* 11 U.S.C. § 362(a).

### B.     B & N Litigates Woerner's Chapter 11 Case

In the ensuing eleven months, B & N provided services that it claimed were worth $134,800 in legal fees.  On May 18, 2010, with B & N's assistance, Woerner filed mandatory disclosure documents with the bankruptcy court—namely, schedules and a statement of financial affairs.

B & N also defended Woerner in adversary proceedings that were brought to prevent Woerner from discharging liabilities.  On August 4, 2010, Texas Skyline initiated an adversary proceeding with the bankruptcy court

No. 13-50075

under 11 U.S.C. § 523(a)(4) for breach of fiduciary duty. Texas Skyline then fought to lift the stay of the state-court judgment. Woerner contested and lost, and the stay of state-court proceedings was lifted. Woerner also contested adversary proceedings brought by John Baker II, one of the other active creditors in this case. On November 2, 2010, Woerner filed Amended Schedules (b) and (c) and also amended his Statement of Financial Affairs.

B & N helped Woerner negotiate with his creditors. Woerner and the adversarial creditors agreed to mediation with a bankruptcy judge. Talks with Texas Skyline broke down, but on December 17, 2010, B & N filed a Joint Motion to Compromise with the bankruptcy court, which B & N maintained would have resolved this case. Yet Baker insisted that the settlement was merely a proposal, objected to it, and refused to execute it. For these negotiation services, B & N sought over $6,000.

B & N also investigated the concealment of some of Woerner's assets and subsequently amended Woerner's financial disclosures to include approximately $9,000 of additional personal assets, including investments, jewelry, firearms, and fur coats that were not originally disclosed. This concealment prompted Baker to move to convert Woerner's case from a Chapter 11 reorganization to a Chapter 7 trustee-administered liquidation. *See* 11 U.S.C. § 1112(b)(1) (requiring the bankruptcy court to convert or dismiss a Chapter 11 case upon finding "cause"). Texas Skyline moved to intervene in the motion to convert. B & N litigated Woerner's attempts to press for a motion to approve the settlement and oppose the motion to convert. The billing records show that the firm (1) prepared a motion to sell some of Woerner's personal property for the purpose of funding an appeal from the state-court judgment; (2) started investigating potential causes of action against Texas Skyline and Baker; (3) drafted a disclosure statement and reorganization plan; and

4

(4) deposed a representative from Texas Skyline about potential mismanagement of partnership assets.

## C.    Woerner's Case Is Converted to Chapter 7, Ending B & N's Representation

The bankruptcy court conducted a hearing on the pending motions, denying the motion to approve the settlement and granting the motion to convert on April 20, 2011.  As the bankruptcy court summarized in its oral ruling on the fee application, "the Court found that it was appropriate to convert this case to Chapter 7 because the Court was of the opinion . . . that [Woerner] w[as] not forthright as [a] Debtor[] under the Bankruptcy Code in terms of listing [his] assets and giving proper evaluations."  On September 3, 2011, B & N filed an application for approximately $134,000 in fees under § 330.   Following the U.S. Trustee's objection, B & N amended its fee application.  B & N ultimately sought $130,656.50 in fees, and $5,793.37 in expenses.  The Trustee renewed its objection to the fees. Texas Skyline also objected, arguing that all of the fees were unreasonable because (1) Woerner never had the means to fund a Chapter 11 reorganization and (2) B & N's actions were dilatory and required creditors to incur unnecessary attorney's fees.

## D.    The Bankruptcy Court Disallows Most of B & N's Requested Fees

The bankruptcy court then conducted a hearing on the fee request. B & N offered testimony from Woerner's nonbankruptcy counsel and two attorneys from B & N to prove that (1) Woerner brought the case for a legitimate purpose and (2) the litigation costs were driven up by Texas Skyline's alleged intransigence.

The bankruptcy court took the fee application under advisement and entered an oral ruling on April 11, 2012.  Citing *Pro–Snax*, the bankruptcy court explained that, for a service to be compensable under § 330, fee

No. 13-50075

applicants must prove that the service resulted in an "identifiable, tangible, and material benefit to the bankruptcy estate," *Pro–Snax*, 157 F.3d at 426. Applying that standard, the bankruptcy court awarded the expenses in full but only $19,409.00 in fees—an 85% reduction. The bankruptcy court arrived at $19,409.00 by considering separately each category of fees (such as case administration, resisting a motion to lift the stay, preparing bankruptcy schedules, and similar categories), granting some in whole and some in part, and denying others. Most of the disallowed fees were denied due to B & N's lack of success. Specifically, the bankruptcy court found much of B & N's billed time was not of identifiable benefit to the estate. The district court entered its final order affirming the bankruptcy court on January 17, 2013. It ruled that the record supported finding that B & N's fees were unreasonable under § 330 and *Pro–Snax*. The district court observed that the bankruptcy court "specifically invoked *Pro–Snax* at the hearing on fees, and appears to have relied upon it in determining to reduce [B & N]'s fees based on the limited success and lack of benefit to the estate." It declined to entertain B & N's argument that *Pro–Snax* was wrongly decided and rejected B & N's contention that the opinion's operative language was dicta, concluding that *Pro–Snax* supplied the governing standard for attorney compensation under Chapter 11 in the Fifth Circuit. Correspondingly, the district court found no error in the bankruptcy court's application of *Pro–Snax* to B & N's fee application.

## II. JURISDICTION AND STANDARD OF REVIEW

B & N timely filed a notice of appeal from the bankruptcy court's order to the United States District Court for the Western District of Texas under 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8002(a). The district court had jurisdiction over Woerner's Chapter 11 bankruptcy case

No. 13-50075

under 28 U.S.C. §§ 157, 158, and 1334.  We have jurisdiction over this timely appeal from the district court's order under 28 U.S.C. §§ 158(d)(1) and 2107(b).

This Court reviews the district court's decision "by applying the same standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (per curiam).  Moreover, this Court reviews the bankruptcy court's award of attorney's fees for abuse of discretion.  *Id.* (citing *In re Coho Energy, Inc.*, 395 F.3d 198, 204 (5th Cir. 2004); *In re Barron,* 325 F.3d 690, 692 (5th Cir. 2003)).  "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard[, reviewed de novo,] or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* (citing *In re Evangeline Ref. Co.,* 890 F.2d 1312, 1325 (5th Cir. 1989)).

## III. DISCUSSION

B & N argues that this Court's interpretation of § 330 in *Pro–Snax* is erroneous, and that remand to the bankruptcy court is warranted in order for that court to assess B & N's request for attorney's fees under the correct legal standard.  The U.S. Trustee agrees with B & N that *Pro–Snax* was wrongly decided but maintains that remand is unnecessary because B & N is not eligible for any fees beyond those awarded by the bankruptcy court even under the more lenient prospective standard that B & N and the U.S. Trustee advocate.  Texas Skyline contends that this Court should affirm the district court's ruling regardless of our disposition of *Pro–Snax* because B & N is not entitled to the fees it seeks under any standard.  We address these issues—the viability of *Pro–Snax* and the need for remand—in turn.

No. 13-50075

## A.   The Proper Standard for Awarding Attorney's Fees Under § 330

B & N and the U.S. Trustee contend that the "hindsight" or "material benefit" standard we enunciated in *Pro–Snax* conflicts with the text and legislative history of § 330 and unnecessarily places us at odds with our sister circuits.  We agree.

### 1.   *Statutory Framework*

#### a.   *Reorganization Under Chapter 11 of the Bankruptcy Code*

When a debtor commences a bankruptcy case, a legal entity known as the "estate" is created.  11 U.S.C. § 541(a).  The estate contains all of the debtor's property, subject to exceptions not applicable here.  *Id.*  When a debtor files a case to reorganize under Chapter 11, the debtor becomes the debtor-in-possession of the estate and takes on the rights, powers, and fiduciary duties of a trustee.  *Id.* §§ 1101, 1106–1108; *see also CFTC v. Weintraub*, 471 U.S. 343, 355 (1985).  The debtor-in-possession retains control over the property of the estate and must repay creditors according to the terms of a reorganization plan.  11 U.S.C. §§ 1115(b), 1123, 1142.  The proponent of a reorganization plan—usually, but not necessarily, the debtor-in-possession—must provide a court-approved disclosure statement that contains "adequate information" about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an "informed judgment" about the plan.  *Id.* §§ 1121, 1125.  Creditors may accept or reject the reorganization plan in a special voting process governed by the Bankruptcy Code.  *Id.* § 1126.

If the creditors accept the reorganization plan, it must then be confirmed by the bankruptcy court.  *Id.* § 1129.  The confirmation of the reorganization plan typically brings the bankruptcy case to an end.  *Id.* § 1141.

No. 13-50075

### b.    *Compensation to Professionals Under Chapter 11*

The debtor-in-possession may ask the bankruptcy court for permission to employ professionals, including attorneys, to assist the debtor-in-possession with the reorganization of the bankruptcy estate.  *Id.* § 327.

Congress has enacted a uniform scheme for retaining and compensating such attorneys under 11 U.S.C. §§ 327–330.  First, under § 327(a), the debtor must obtain the bankruptcy court's approval to employ the attorney.  Then, under § 330(a)(1)(A), an attorney who has been employed under § 327(a) may request "reasonable compensation for actual, necessary services rendered." The bankruptcy court may exercise its discretion, upon motion or sua sponte, to "award compensation that is less than the amount . . . requested."  *Id.* § 330(a)(2).  Section 330(a)(3) further directs courts to "consider the nature, the extent, and the value of" the legal services provided when determining the amount of reasonable compensation to award, "taking into account all relevant factors, including":

    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were *necessary to the administration of, or beneficial at the time at which the service was rendered* toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3) (emphasis added).

No. 13-50075

Section 330(a)(4) further lists those services for which a court may *not* approve compensation:

> (A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>> (i) unnecessary duplication of services; or
>> (ii) services that were not—
>>> (I) *reasonably likely to benefit the debtor's estate*; or
>>> (II) necessary to the administration of the case.

*Id.* § 330(a)(4) (emphasis added).

### 2.    *The* Pro–Snax *Retrospective, "Material Benefit" Standard*

The underlying bankruptcy case at issue in *Pro–Snax* was initiated when creditors filed an involuntary Chapter 7 bankruptcy petition against the debtor. *Pro–Snax,* 157 F.3d at 416. The bankruptcy court later converted the case to Chapter 11 upon the debtor's consent and appointed a Chapter 11 trustee soon thereafter. *Id.* The debtor proposed a plan of reorganization, but the bankruptcy court denied confirmation of the plan based largely on the creditors' objections. *Id.* at 416–17. The court then converted the case back to a Chapter 7 proceeding. *Id.* at 417.

The law firm Andrews & Kurth ("A & K") provided legal services to the debtor both before and after the case had been converted to Chapter 11. *Id.* at 416–17. Upon A & K's fee application, the bankruptcy court awarded A & K $30,000 in fees and $7,500 in expenses. *Id.* at 417 n.4. The district court reversed the award on the ground that § 330 precluded A & K from being compensated from the assets of the estate for work performed after the Chapter 11 trustee had been appointed. *Id.* at 419. The district court remanded the case to the bankruptcy court, however, for a recalculation of fees in light of the creditors' concession that A & K was entitled to compensation for the work it performed before the Chapter 11 trustee was appointed. *Id.* at 419. In so doing, the district court instructed the bankruptcy court to consider the

"backdrop of the American Rule, any statutory exceptions to that rule applicable in this case, and the usual standards for the award of fees to be paid by other parties to the litigation." *Family Snacks, Inc. v. Andrews & Kurth, L.L.P. (In re Pro–Snax Distribs., Inc.),* 212 B.R. 834, 839 (N.D. Tex. 1997).

On appeal, our Court divided its discussion of the merits into two parts. We first took up the issue of "whether a Chapter 11 debtor's attorney may be compensated for work done after the appointment of a trustee under § 330(a) of the Bankruptcy Code." *Pro–Snax,* 157 F.3d at 416. After considering the statutory language of § 330, congressional intent, and public policy, this Court ultimately concluded that § 330, on its face, precludes any award of fees to a debtor's attorney for that attorney's work performed *after* a Chapter 11 trustee has been appointed. *Id.* at 425–26. The Supreme Court later vindicated this holding in *Lamie v. U.S. Trustee,* 540 U.S. 526 (2004), and our opinion today has no effect on this holding.

In the second, briefer part of the opinion, of relevance here, we discussed the applicable standard to evaluate A & K's fee application for the services it rendered to the debtor *before* the trustee was appointed. This Court considered two possible tests advocated by the parties. A & K urged the use of a "reasonableness" test—"whether the services were objectively beneficial toward the completion of the case *at the time they were performed.*" *Id.* at 426 (emphasis added). The creditors, on the other hand, advanced a hindsight approach—whether the services *"resulted* in an identifiable, tangible, and material benefit to the bankruptcy estate." *Id.* (emphasis added). Citing only *In re Melp, Ltd.,* 179 B.R. 636 (E.D. Mo. 1995), we adopted the stricter "hindsight" or "material benefit" measure, expressing our reluctance "to hold that any service performed at any time need only be reasonable to be compensable." *Id.* It is this standard that we reconsider today.

11

### 3. *The Text, History, and Application of § 330*

#### a. *The Text of § 330*

Section 330 gives a bankruptcy court discretion to determine the amount of reasonable compensation. But the statute also constrains that discretion by requiring the court to "tak[e] into account" a set of listed factors, including "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered* toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C) (emphasis added).

The statute reinforces this point in an accompanying section: a court must disallow any compensation when the services "were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case." *Id.* § 330(a)(4)(A)(ii) (punctuation omitted); *see In re ASARCO, L.L.C.*, 751 F.3d 291, 299 (5th Cir.), *cert. granted*, 135 S. Ct. 44 (2014) ("Section 330 states twice, in both positive and negative terms[,] that professional services are compensable only if they are likely to benefit a debtor's estate or are necessary to case administration." (citation omitted)); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996) (referring to "reasonably likely to benefit the debtor's estate" as an "inverse construction" of § 330(a)(3)(C)), *abrogated on other grounds by Lamie*, 540 U.S. 526. Read together, a court may compensate an attorney for services that are "reasonably likely to benefit" the estate and adjudge that reasonableness "at the time at which the service was rendered."

Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual, material benefit. "Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made." *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995). The statute permits a court to compensate an attorney not only for activities that were

12

No. 13-50075

"necessary," but also for good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not produce an "identifiable, tangible, and material benefit." What matters is that, prospectively, the choice to pursue a course of action was reasonable.[3]

### b.     *The Legislative History of § 330*

The legislative history of § 330 provides additional support for this reading. When Congress enacted § 330 in 1978, it relaxed the previously stringent standard that bankruptcy courts applied in reviewing professional fee awards. 3 *Collier on Bankruptcy* ¶ 330.LH[4] (16th ed. 2015). Under the old regime, our Court enforced a "strong policy . . . that estates be administered as efficiently as possible." *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977) (citations omitted), *superseded by statute*, 11 U.S.C. § 330. This policy originated in the idea that "[s]ince attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court, they should not expect to be compensated as generously for their services as they might be were they privately employed." *Id.* (citation omitted); *see also Mass. Mut. Life Ins. Co. v. Brock*, 405 F.2d 429, 432–33 (5th Cir. 1968) (holding that the interest of the public—especially the debtor and creditors—could limit compensation to a debtor's counsel), *superseded by statute,* 11 U.S.C. § 330.

---

[3] *In re Taxman Clothing Co.* provides a concrete example:

Suppose that [debtor's attorney] had been seeking to recover . . . $330,000 and that he had had a 90 percent chance of winning a judgment for that amount and successfully defending the judgment in this court. An expenditure of $85,000 in attorney's fees would not be unreasonable when the expected benefit was $297,000 ($330,000 x .9), so if the attorney performed competently but simply was unlucky and lost he would have a good claim for his fees . . . .

49 F.3d at 313.

No. 13-50075

But "[i]n enacting section 330, Congress intended to move away from doctrines that strictly limited fee awards" and instead provide compensation "commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In re UNR Indus., Inc.*, 986 F.2d 207, 208–09 (7th Cir. 1993) (citing, *inter alia*, H.R. Rep. No. 95–595, at 329–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6286). To that end, § 330 instructs courts to award "reasonable compensation" for "actual, necessary services" based on "the nature, the extent, and the value of such services."   11 U.S.C. § 330(a). Congress took a further step in 1994 when it "codif[ied] many of the factors previously considered by courts in awarding compensation and reimbursing expenses."   3 *Collier on Bankruptcy* ¶ 330.LH[5]; *see* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 224, 108 Stat. 4106, 4130–31 (1994).[4]   In particular, Congress added the language at issue here: §§ 330(a)(3)(C) and 330(a)(4)(A).

The drafting history of those provisions suggests that Congress considered and specifically rejected an actual-benefit test.  The Senate version of the Bankruptcy Reform Act of 1994 contained the seed of the eventual guidelines for reasonable compensation contained in § 330.  *See* S. 540, 103d Cong. § 309 (as reported by S. Comm. on the Judiciary, Oct. 28, 1993).  The Bill reported out of the Senate Judiciary Committee differed in at least one important respect from the eventual Act, however.   That Senate draft instructed courts only to consider "whether the services were necessary in the administration of or beneficial toward the completion of a case under [the

---

[4] For example, our circuit was among the first to conclude that the factors developed for determining reasonable attorney's fees in the non-bankruptcy context were "equally useful" in assessing bankruptcy attorney's fees. *First Colonial*, 544 F.2d at 1299 (applying factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), to a bankruptcy fee determination).  Those same factors formed the foundation for the 1994 revision. *See* 3 *Collier on Bankruptcy* ¶ 330.LH[5] n.12.

Bankruptcy Code]." *Id.* After adopting a floor amendment, however, the Senate added the words "at the time at which the service was rendered" after the word "beneficial." *See* 140 Cong. Rec. 8383 (1994) (setting out amendment 1645 to S. 540); S. 540, 103d Cong. § 310 (as passed by Senate, Apr. 26, 1994); *see also Lamie*, 540 U.S. at 539–40 (discussing amendment 1645). The House version of the legislation did not include any guidelines for determining the reasonableness of attorney compensation. *See generally* H.R. 5116, 103d Cong. (as reported by H. Comm. on the Judiciary, October 4, 1994). The legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual-benefit requirement determinable by a court only at the completion of the case.

### c.    *The Application of § 330 in Other Circuits*

In light of the plain language of § 330(a)(4)(A) after the 1994 amendments, the Second, Third, and Ninth Circuits have rejected the actual-benefit test in favor of a prospective standard. In *In re Ames Department Stores, Inc.*, the Second Circuit expressly rejected an approach that would make fee awards "contingent upon a showing of actual benefit to the estate," opting instead to give effect to the statute's "reasonably likely to benefit the debtor's estate" standard. 76 F.3d at 71–72. The Third Circuit similarly rejected the actual-material-benefit standard, concluding that it departed from the statute by imposing a "heightened standard" and requiring evaluation "by hindsight." *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 131–32 (3d Cir. 2000), *abrogated on other grounds by Lamie*, 540 U.S. 526. Finally, the Ninth Circuit held that § 330(a)(4)(A) superseded that court's past precedent, which had "requir[ed] that the services actually provide an 'identifiable, tangible and material benefit to the [debtor's] estate.'" *In re Smith*, 317 F.3d 918, 926–27

15

No. 13-50075

(9th Cir. 2002) (quoting *In re Xebec,* 147 B.R. 518, 523 (B.A.P. 9th Cir. 1992)), *abrogated on other grounds by Lamie*, 540 U.S. 526.[5]

*Pro–Snax*'s only citation in support of the actual-benefit test was *In re Melp*, a case that interpreted the pre-1994 version of § 330. *See* 179 B.R. at 639 (quoting pre-1994 language). Indeed, the only other circuit precedents to apply an actual-benefit requirement either were decided before 1994 or relied entirely on pre-1994 precedent for determining "reasonable compensation."[6] As discussed above, though, whereas the pre-1994 statutory language did not provide guidance on whether to consider the reasonable likelihood a service would benefit the estate, the post-1994 language foreclosed an actual-benefit test by requiring that the court evaluate the likelihood of benefit to the estate at the time the service was rendered. All other circuits that have construed the post-1994 version of § 330 have recognized this distinction. *Pro–Snax*'s reliance on *Melp* is misplaced and puts us out of step with our sister circuits.[7]

### 4.    The Prospective, "Reasonable at the Time" Standard

We conclude that § 330 embraces the "reasonable at the time" standard for attorney compensation endorsed by our colleagues in the Second, Third,

---

[5] The Seventh Circuit has applied a similar rule without specifically relying on the post-1994 guidelines. *See In re Taxman Clothing Co.*, 49 F.3d at 314–16 (holding that the bankruptcy court abused its discretion in granting a fee award to an attorney whose preference action did not have a reasonable likelihood of benefiting the estate).

[6] *See In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate." (quoting *In re Reed*, 890 F.2d 104, 106 (8th Cir. 1989)); *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("An element of whether the services were 'necessary' is whether they benefited the bankruptcy estate."); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 882–83 (11th Cir. 1990) (interpreting pre-1994 § 330 as requiring that attorney's appeal bring a benefit to the estate).

[7] We note that courts within our own Circuit have applied *Pro–Snax* unevenly. *See, e.g., In re Broughton Ltd. P'ship*, 474 B.R. 206, 209 n.5 (Bankr. N.D. Tex. 2012) (collecting cases and observing that "[l]ower courts have adopted differing views of what type of retrospective analysis should be employed and have disagreed whether a prospective analysis may be considered in determining whether *Pro–Snax* is satisfied").

and Ninth Circuits.  As explained above, the text and legislative history of § 330 contemplate a prospective standard for the award of attorney's fees relating to bankruptcy proceedings—one that looks to the necessity or reasonableness of legal services at the time they were rendered.  Under this framework, if a fee applicant establishes that its services were "necessary to the administration" of a bankruptcy case or "reasonably likely to benefit" the bankruptcy estate "at the time at which [they were] rendered," *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable.

In assessing the likelihood that legal services would benefit the estate, courts adhering to a prospective standard ordinarily consider, among other factors, the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor).  *See, e.g.*, *In re Strand*, 375 F.3d 854, 860–61 (9th Cir. 2004); *In re Top Grade Sausage, Inc.*, 227 F.3d at 132; *In re Ames Dep't Stores, Inc.*, 76 F.3d at 72; *In re Taxman Clothing Co.*, 49 F.3d at 313–15. Whether the services were ultimately successful is relevant to, but not dispositive of, attorney compensation. *See* 11 U.S.C. § 330(a)(3) ("[T]he court shall consider the nature, the extent and *the value* of such services, taking into account all relevant factors . . . ." (emphasis added)); *In re Smith*, 317 F.3d at 926; *In re Top Grade Sausage, Inc.*, 227 F.3d at 132; *In re Ames Dep't Stores, Inc.*, 76 F.3d at 71; *cf. Johnson*, 488 F.2d at 718 (instructing courts to consider "the results obtained" by an attorney seeking compensation); *see also In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (affirming the continued relevance of the *Johnson* factors).

No. 13-50075

Insofar as *Pro–Snax* precludes resort to this prospective analysis, we overrule those portions of the opinion. We recognize, however, that *Pro–Snax*'s principal holding remains valid, and we observe that our ruling today is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, "taking into account all relevant factors," 11 U.S.C. § 330(a)(3). Having articulated a new standard, we now must decide whether remand is warranted in order for the bankruptcy court to assess B & N's attorney's-fee application under the appropriate standard.

**B.    The Need for Remand to Analyze B & N's Attorney's-Fee Request**

We review a bankruptcy court's fee determination for abuse of discretion, and remand is warranted when the bankruptcy court "(1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Cahill*, 428 F.3d at 539.

B & N asserts that remand is compulsory because the bankruptcy court premised its findings of fact and conclusions of law on *Pro–Snax*'s now-erroneous "material benefit" standard. Both Texas Skyline and the U.S. Trustee counter that remand is unnecessary because this Court can affirm the district court's ruling on any ground supported by the record, *e.g., Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995), and because there is "no reasonable possibility that the outcome would be different" on remand, *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) (citing *Joshi v. Fla. State Univ. Health Ctr.*, 763 F.2d 1227, 1236 (11th Cir. 1985)). The U.S. Trustee points out that when the bankruptcy court denied B & N's motion to certify the matter for direct appeal, it indicated that the case was "not a good candidate" because the disposition would be the same "whether you don't or you do apply the results oriented component of *Pro–Snax*." But although the bankruptcy court stated its impression that the outcome would be the same under either

18

standard, it did not conduct its analysis with an eye toward the prospective inquiry whether the services were "reasonable at the time" they were rendered. *Cf. In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211, 213 (5th Cir. 1983) (remanding where the bankruptcy court failed to set forth findings of fact and conclusions of law under each element of the relevant test). In the absence of findings of fact premised on a prospective rule, we cannot say with certainty that there is "no reasonable possibility that the outcome would be different" on remand, *Sims*, 77 F.3d at 849.

Because our opinion today announces a new legal rule, and out of an abundance of caution given the complex facts of the case before us, we remand this matter for the bankruptcy court to evaluate whether B & N is entitled to fees under the prospective, "reasonable at the time" standard.

## IV.  CONCLUSION

For the foregoing reasons, we overrule *Pro–Snax*'s attorney's-fee standard and join our colleagues in the Second, Third, and Ninth Circuits in prescribing a prospective, "reasonable at the time" standard for the award of attorney's fees in a Chapter 11 bankruptcy proceeding.  We therefore VACATE the award of attorney's fees and REMAND this matter to the district court. We further direct the district court to remand to the bankruptcy court to apply the newly announced standard to the facts of this case.[8]

---

[8] In light of the extensive record and in the interest of judicial economy, we leave it in the sound discretion of the bankruptcy court whether it can decide this question on the existing record or whether further factual development is warranted.

No. 13-50075

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur in Judge Prado's thorough and comprehensive writing and write separately only to synthesize the legal standard that we now adopt:

> A bankruptcy court's analysis of attorney fee awards ordinarily should begin and end by applying the statutory language in 11 U.S.C. § 330. This analysis usually can be reduced as follows: (1) a court is permitted, but not required, to award fees under § 330 for services that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed (or contributed to the administration of the estate); and (2) courts may consider all other relevant equitable factors, as stated in § 330(a)(3), including as one of those factors, when appropriate, whether a professional service contributes to a successful outcome.

Our opinion today does not *require* a bankruptcy court to award fees for any service that can be characterized as reasonable as of the time it was performed, as the bankruptcy courts remain restricted by the terms of § 330, which require compensable services to be both "actual" and "necessary." 11 U.S.C. § 330(a)(1)(A). Thus, a bankruptcy court evaluating the prospective reasonableness of an attorney's litigation strategy should consider whether the services were targeted to obtain an identifiable, material benefit. An identifiable benefit distinguishes an actual benefit from a speculative one, and a material benefit distinguishes a necessary benefit from an irrelevant one.

Because I read Judge Prado's writing to endorse these views, I am pleased to concur in his fine opinion.